UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No.2024cr147 (ECT/LIB)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JOHNATHAN ERIC THOMPSON,

        Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and the defendant, Johnathan Eric Thompson, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Conspiracy to Distribute Methamphetamine and Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. The defendant fully understands the nature and elements of the crime with which he has been charged.

Upon imposition of sentence, if there are remaining counts, the government agrees to move to dismiss those remaining charges against the defendant contained in the Indictment.

1

In consideration for the defendant's plea of guilty, the government agrees it will not seek a Superseding Indictment or otherwise pursue charging the defendant with additional drug distribution, drug conspiracy, or firearm possession counts resulting from its present case or investigation.

2. **Factual Basis.** The defendant is pleading guilty because he is in fact guilty of Count 1 of the Indictment. In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

During the months of October and November 2023, the defendant, who is known as "Remy" conspired with co-conspirators to sell large amounts of methamphetamine and fentanyl in Duluth, Minnesota area. The defendant, acting with his co-conspirators, traveled from Chicago, where he obtained methamphetamine and fentanyl, and then imported these substances into Duluth, Minnesota. ~~The defendant was the leader and organizer of the drug trafficking organization.~~ JT [initials] [initials]

On October 27, 2023, the defendant acted with co-conspirators and sold approximately 1,830 grams of methamphetamine to another individual in the city of Duluth, Minnesota. In return for the methamphetamine, the defendant received United States currency. On November 16, 2023, the defendant acted with co-conspirators and sold

approximately 2,280 grams of methamphetamine to another individual in the city of Duluth, Minnesota. In return for the methamphetamine, the defendant received United States currency.

To effectuate the sale of controlled substances, the defendant and members of the drug trafficking organization utilized an apartment located at 2906 West 3rd Street, Duluth for the purpose of storing and packaging methamphetamine and fentanyl for sale. When the defendant was residing in Duluth, he often stayed at 30 North 24th Avenue and stored money that he received from controlled substance sale.

On November 30, 2023, law enforcement officers executed search warrants at both 2906 West 3rd Street, Duluth and 30 North 24th Avenue, Duluth. The controlled substances, specifically approximately 858 grams of methamphetamine and approximately 568 grams of fentanyl were seized at 2906 West 3rd Street, Duluth, Minnesota. The defendant, along with co-conspirators, were the owners of these controlled substances, which were intended for sale to others in the Duluth, Minnesota area.

On November 30, 2023, the defendant was arrested by law enforcement. At the time of his arrest, the defendant possessed approximately 268 grams of fentanyl and 100 counterfeit fentanyl pills in a backpack that he carried. These controlled substances were

intended for sale in the Duluth, Minnesota area. In total, throughout the months of October and November 2023, the defendant possessed 500 grams or more of actual methamphetamine and 400 grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly called "fentanyl.")

3. **Waiver of Pretrial Motions.** The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights.** The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him.

4

The defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5. **Additional Consequences.** The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6. **Statutory Penalties.** The defendant understands that Count 1 of the Indictment, charging Conspiracy to Distribute Methamphetamine and Fentanyl in violation of 21 U.S.C. § 841(a)(1)., 841(b)(1)(A) and 846 is a felony offense that carries the following statutory penalties:

a. a mandatory minimum of 10 years in prison;

b. a maximum of lifetime in prison;

c. a supervised release term of at least two years up to a maximum supervised release term of five years;

d. a maximum fine of $10,000,000.00

e. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A); and

f. In drug cases: the possible loss of eligibility for federal benefits pursuant to 21 U.S.C. § 862(a)(1).

7. **Guidelines Calculations**. The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

   a. <u>Base Offense Level</u>. The parties agree that the base offense level is **34**. U.S.S.G. § 2D.11.

   b. <u>Specific Offense Characteristics</u>. The parties agree that the offense level should be increased by **4 levels** because the offense involved use of drug premises and importation of controlled substances. U.S.S.G. § 2D1.1(b)(12) and 2D1.1(b)(16)(C). The parties agree that no other specific offense characteristics apply.

   c. <u>Chapter 3 Adjustments</u>. The government believes that the offense level should be increased by **2 levels** because the

6

defendant was an organizer, leader, manager or supervisor of the criminal activity. The defendant is free to argue against this 2 level adjustment.

d. Acceptance of Responsibility. The government agrees to recommend that the defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e. Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category VI. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced

based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

f. <u>Guidelines Range</u>. If the adjusted offense level is **37** and the criminal history category is **VI**, the Sentencing Guidelines range is **360 months to life** imprisonment.

<u>The defendant understands that, regardless of the Guidelines range, the statutory mandatory minimum sentence in this matter is 10 years of imprisonment.</u>

g. <u>Fine Range</u>. If the adjusted offense level is **37**, the Sentencing Guidelines fine range is $40,000.00 to $10,000,000.00. U.S.S.G. § 5E1.2(c).

h. <u>Supervised Release</u>. The Sentencing Guidelines' term of supervised release is not more than 5 years. U.S.S.G. § 5D1.2.

8. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the

8

Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

10. **Agreements as to Sentencing Recommendation**. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea. Notwithstanding the reservations above, the government agrees to seek a sentence of no more than 240 months. The defendant is free to recommend whatever sentence he deems appropriate.

11. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

**Forfeiture.** The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges.

12. The defendant agrees to forfeit to the United States, pursuant to 21 U.S.C. § 853(a)(1) and (2), any and all property constituting, or derived from, any proceeds the defendant obtained directly or indirectly as a result of Count 1 of the indictment, and any and all property used, or intended to be used, in any manner or part to commit or to facilitate the commission of said violations.

13. The defendant agrees that the property subject to forfeiture includes but is not limited to:

    a. $9,478.00 in United States currency;

    b. a Ruger MTK .22 caliber handgun, serial number 1439710;

    c. a Ruger LC9s 9 mm handgun, serial number 45147221;

    d. a Kuhr CW9 9 mm handgun, serial number YB8019; and

    e. a Taurus GZC handgun serial number ACD764350.

  14. The defendant agrees that the $9,478.00 is subject to forfeiture because it is the proceeds of the conspiracy to distribute heroin, and the firearms listed above are subject to forfeiture because the defendant used them as part of the same conspiracy. The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit additional directly forfeitable property.

  15. The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest the defendant may have in the property. The defendant waives all statutory and constitutional defenses to the forfeiture and waives any right to contest or challenge in any manner (including direct appeal, habeas corpus, or any other means) such forfeiture on any grounds. To the extent the defendant has sought remission or otherwise challenged the forfeiture of the above-described property, the defendant withdraws any such challenges.

  16. **Waivers of Appeal and Collateral Attack.** The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to

appeal guilt or innocence, any issues relating to the change-of-plea proceedings, a sentence imposed that is less than 240 months, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. This collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

17. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18. **Plea Statements May Be Used Against the Defendant.**

The defendant acknowledges discussing Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence with the defendant's attorney. These rules ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. The defendant knowingly and voluntarily waives the rights that arise under these rules in the event that the defendant withdraws the defendant's guilty plea or withdraws from this agreement after signing it.

19. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the

defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

ANDREW M. LUGER
United States Attorney

Date: Sept. 5, 2024

BY: Nichole J. Carter
Assistant United States Attorney

Date: 9/5/24

Johnathan Eric Thompson
Defendant

Date: 9/05/2024

Patrick Cotter
Counsel for Defendant