UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-CR-00147(ECT/LIB)

---

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Johnathan Eric Thompson, )<br>)<br>Defendant. ) | **DEFENDANT'S MOTION FOR A VARIANCE AND POSITION REGARDING SENTENCING** |

---

The Defendant, by and through his attorney, Patrick L. Cotter, and pursuant to U.S.S.G. § 6A1.2, and Local Rule 83.10, respectfully submits the following position regarding sentencing in this matter.

## **MOTION FOR A VARIANCE**

Mr. Thompson comes before this Court for sentencing following his guilty plea to *Conspiracy to Distribute 500 Grams or More of a Mixture and Substance Containing a Detectable Amount of Methamphetamine and 400 Grams or More of a Mixture and Substance Containing a Detectable Amount of Fentanyl*, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. The total offense level after the proposed adjustments is 37, which carries a sentencing range of 360 months to life imprisonment. PSR ¶¶ 21-32. There is also a statutory mandatory minimum term of 120 months imprisonment. The government agrees to recommend a sentence of no more than 240 months imprisonment.

Mr. Thompson respectfully requests a 180-month prison sentence. The government has not established that Mr. Thompson was a leader, organizer, manager, or supervisor in

the offense, making the two-level role adjustment improper. Mr. Thompson has already served 428 days in state custody, which should be considered in determining a fair and proportional sentence. Lastly, Mr. Thompson's early exposure to crime, violence, and substance use—combined with his entrenchment in the criminal justice system from a young age—underscores the need for a sentence that acknowledges these mitigating factors while still reflecting the seriousness of the offense. A 180-month sentence is sufficient but not greater than necessary to achieve the goals of sentencing: providing accountability while allowing Mr. Thompson the opportunity for rehabilitation and reintegration into society.

## ARGUMENT

### I. MR. THOMPSON SHOULD RECEIVE CREDIT FOR THE HARD TIME HE HAS SPENT IN STATE CUSTODY.

A criminal defendant is entitled to any custody credit received for any term of imprisonment spent in official detention prior to the date the sentence commences "as a result of the offense for which the sentence was imposed…that has not been credited against another sentence." 18 U.S.C. § 3585. If a defendant served time on an underlying state court case, and that case involves the same conduct or transaction as the federal offense, the defendant has spent time in detention "as a result of the offense for which the sentence was imposed." *See United State v. Moore*, 978 F.2d 1029, 1030-31 (8th Cir. 1992). Moreover, if the state court case is dismissed prior to the imposition of sentence in the federal case, the time served in custody while awaiting state court prosecution has not been credited against another offense. *See id*.

In this case, Mr. Thompson has spent 428 days in custody—time that continues to accrue—without receiving credit toward any other sentence, making it clear that this period should be applied to his federal sentence under 18 U.S.C. § 3585. Mr. Thompson was originally detained and charged by local authorities at the state level, in case file number 69DU-CR-23-3236, on November 30, 2023 for the same conduct that is present in the instant federal offense. Mr. Thompson was then transferred to federal custody on June 11, 2024 pursuant to a writ. PSR § 60. The state charges from 69DU-CR-23-3236 were dismissed on July 2, 2024.

However, a companion state case 69DU-CR-23-2006 which Mr. Thompson is held without pond remains pending in St. Louis County District Court.  Since Mr. Thompson's federal sentence has yet to commence, and there is a state court case for which he is still held without bond prior to his transfer to federal custody Mr. Thompson will not receive custody credit from the Bureau of Prisons.  This Court should consider his extensive pretrial detention and vary downward to account for it.

**II.   THE COURT SHOULD REJECT APPLYING AN UPWARD ADJUSTMENT FOR A LEADER/ORGANIZER ROLE.**

Pursuant to USSG §3B1.1(c), if the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in USSG §3B1.1(a) or (b), increase by 2 levels. In distinguishing a leadership role, titles are not controlling. Factors the Court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or

3

organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. USSG §3B1.1, comment. (n.4).

The government has not established that Mr. Thompson exercised sufficient control or authority over others to warrant a two-level role adjustment under USSG §3B1.1(c). While Mr. Thompson was a key participant in the drug trafficking conspiracy, the available facts do not demonstrate that he acted as an "organizer, manager, or supervisor" within the meaning of the guideline.

The government asserts that Mr. Thompson "acted as a broker" and "coordinated sales," but there is no evidence that he directly supervised or managed any co-conspirators. PSR Addendum p. A.1 The fact that Bruce Thompson "worked alongside" Mr. Thompson and "assisted" in maintaining drug stash houses does not establish that Mr. Thompson exercised control over him. PSR ¶ 16. Similarly, CRI statements and phone records suggest Mr. Thompson engaged in drug transactions, but they do not indicate he directed or commanded the actions of others. See PSR ¶¶ 5-16.

The record does not indicate that Mr. Thompson recruited co-defendants or other individuals into the criminal activity. The government's assertion that Mr. Thompson had co-defendants involved in the distribution of narcotics does not equate to recruitment, control, or a leadership role. Mere association in a conspiracy does not satisfy the requirements for an aggravated role.

While Mr. Thompson may have sourced narcotics and brokered transactions, the government has not established that he exercised decision-making authority over other

4

members of the operation. The facts suggest a collaborative criminal operation rather than a hierarchical structure with Mr. Thompson at the top.

The government has also not provided any evidence that Mr. Thompson retained a larger share of the proceeds relative to other participants. There is no indication that he dictated profit distributions or financial decision making within the operation, which is a critical factor in determining a leadership or managerial role.

While the government alleges that Mr. Thompson traveled between Chicago and Duluth for drug transport and sales, such conduct is consistent with that of a courier or distributor rather than an organizer or leader. PSR Addendum pp. A1-A2. The fact that Bruce Thompson conducted a buy on Mr. Thompson's behalf does not necessarily imply managerial oversight, as it is common in drug conspiracies for individuals to delegate transactions without exercising authority over their counterparts. PSR ¶ 10.

The presence of multiple individuals involved in trafficking does not, by itself, establish Mr. Thompson as a leader or organizer. The government's reliance on the amount of drugs tied to Mr. Thompson does not substitute for the necessary showing that he directed, organized, or supervised others. Mr. Thompson's conduct aligns more closely with that of a significant participant rather than an organizer, leader, manager, or supervisor. Therefore, the two-level enhancement under USSG §3B1.1(c) is not warranted.

### III. A SENTENCE OF 180 MONTHS IS SUFFICIENT BUT NOT GREATER THAN NECESSARY.

**A. A 180-month sentence protects the public and satisfies deterrence.**

A 180-month sentence represents a significantly graduated sanction compared to Mr. Thompson's prior terms of imprisonment, which ranged from 336 days to 45 months. PSR ¶ 109. Mr. Thompson has never served a sentence of this magnitude, making 180 months an exponential increase in punishment that is sufficient but not greater than necessary under 18 U.S.C. § 3553(a). This sentence ensures meaningful deterrence, as prior shorter sentences failed to curb his criminal conduct, while also reflecting the seriousness of the offense and promoting respect for the law. Given that the government has agreed to seek a sentence below the guideline range, a 180-month term appropriately escalates punishment without being excessive.

**B. A 180-month sentence is sufficient but not greater than necessary to offer Mr. Thompson effective opportunity for chemical dependency treatment, vocational training, and overall rehabilitation.**

Mr. Thompson graduated from high school and has expressed an interest in commercial truck driving. PSR ¶ 83. However, he has yet to take meaningful steps toward vocational advancement. *See id*. A 180-month sentence would allow him the opportunity to engage in educational and vocational training within the prison system, better preparing him for reintegration upon release.

While Mr. Thompson has not reported any history of diagnosed mental health disorders, his upbringing, exposure to violence, and substance use suggest underlying emotional and psychological struggles. His mother has expressed concerns about his tendency to isolate in times of stress and grief, and she believes he would benefit from counseling. PSR ¶ 69. A structured prison environment with access to mental health resources can provide Mr. Thompson with the necessary tools to address childhood trauma.

6

Mr. Thompson can be rehabilitated with custodial interventions long before 180 months have elapsed. For example, the Residential Drug and Rehabilitation Program is a 500-hour program. The Occupational Education Programs teaching vocational training is a 500-hour program. Dialectical Behavior Therapy Skills (CBT) to learn to manage stress and emotions is a 104-hour program. Anger Management and Cognitive Skills programming are 18 and 24 hours respectively. The list goes on. These types of programs will provide mental health, cognitive health, chemical health, vocational literacy and learning tools that will rehabilitate Mr. Thompson.

Based upon an assessment of Mr. Thompson as an individual, a 180-month sentence is sufficient, but not greater than necessary to rehabilitate him. Any period of incarceration longer than this does nothing more than unnecessarily warehouse him in prison at a great cost both to this man, his children, and to the taxpayers.

    **c.**     **Mr. Thompson's personal history and characteristics offer critical insight into his criminal background and warrant a sentence of no greater than 180 months.**

When determining a sentence, courts are not bound to rigid formulas—they must instead engage in a careful and individualized analysis. The Supreme Court has made it clear that sentencing judges must go beyond the advisory Guidelines and consider the broader factors outlined in 18 U.S.C. § 3553(a) to ensure a sentence tailored to the unique circumstances of each case. (*Gall v. United States*, 552 U.S. 38, 49–50 (2007)). These factors include the nature of the offense, the defendant's history, the need for deterrence, and the protection of the public.

Sentencing is not a mechanical process—it is an individualized assessment that demands consideration of the specific facts before the court. The Eighth Circuit has cautioned against requiring "extraordinary circumstances" to justify a sentence outside the Guidelines (*United States v. Feemster*, 572 F.3d 455, 462 (8th Cir. 2009) (en banc)), emphasizing instead that if a judge finds that a variance is warranted, they must assess both the extent and justification for that deviation. A significant departure requires stronger reasoning than a minor one, and whatever decision the court reaches must be clearly explained for the sake of transparency and fairness (*Feemster*, 572 F.3d at 461).

To craft a just sentence, judges must have the fullest possible understanding of the defendant's life and characteristics (*Williams v. New York*, 337 U.S. 241, 246-47 (1949)). Federal law explicitly allows sentencing courts unrestricted access to information regarding a defendant's background, character, and conduct (*18 U.S.C. § 3661*). This broad discretion ensures that courts can consider all relevant circumstances, rather than reducing a person solely to the offense before them.

Mr. Thompson's background and personal history demonstrate that he has faced significant adversity, his experiences warrant a sentence of 180 months. His early exposure to crime, violence, and substance use, combined with his involvement in the criminal justice system, justify a substantial yet fair and balanced sentence. There is ample research that supports the somber reality of the dreadful connection between Community Violence Exposure (CVE) and adverse mental and emotional health outcomes. Mr. Thompson grew up in a crime-ridden neighborhood in South Chicago perpetuated by poverty, street gangs and crime. Mr. Thomspon was swallowed into community violence exposure where he

witnessed multiple shootings from the age of seven and where violence was normalized. *Id* ¶ 62. Further, his own life was personally endangered by violent crime on multiple occasions. In 2009, he survived a shooting that resulted in the deaths of two individuals in a vehicle he was riding in. *Id*. He was shot when he was 24 and 26, and he was stabbed in 2023. *Id* ¶ 65. These traumatic experiences inevitably fostered his reliance on substance use.

      Mr. Thompson was raised in a challenging environment, largely by extended relatives due to his parents' young age at the time of his birth. He was exposed to substance abuse within the home, particularly through his maternal uncle's excessive alcohol consumption, and he personally discovered his uncle in medical distress before his death. PSR ¶ 61. Throughout his childhood, Mr. Thompson lacked a consistent, stabilizing parental influence. His mother worked extensively to provide for her children, often leaving him in a caretaker role for his younger siblings. PSR ¶ 63. While he maintained close relationships with his grandmother and half-siblings, he was also exposed to negative influences from his paternal relatives, some of whom were involved in gang activity. PSR ¶ 62. Although Mr. Thompson himself was never a gang member, his social circles significantly impacted his decision-making and legal troubles.

      Mr. Thompson was introduced to marijuana at age 12, and later used Ecstasy and Percocet. PSR ¶ 70. His reliance on these substances were not merely to party, but were used as a means of coping with stress and trauma. He continued using marijuana and Percocet until close to his arrest. PSR ¶¶ 77-80. This pattern of substance use, and particularly his reliance on Percocet to numb both physical and emotional pain, indicates a

9

need for structured chemical dependency intervention. A180-month sentence can provide this structure through access to drug rehabilitation programs within the Bureau of Prisons.

While it is imperative the Court consider the unequal and oftentimes unfair upbringing that Mr. Thompson experienced in youth, it is equally important to recognize the positive prosocial aspects of Mr. Thompson life.  Mr. Thompson is an engaged and loving father to his three children.  He referred to the presence of his children in his life as what "keeps me going."  PSR ¶ 67.  He regularly sees his children and maintains communication the best that he can when incarcerated.  Id.  Mr. Thompson's environment fostered absentee fatherhood, but not him… he is present and he cares.

**"The only person you are destined to become is the person you decide to be." – Ralph Waldo Emerson**

## CONCLUSION

For the foregoing reasons, a sentence of 180 months is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

Respectfully submitted,

Dated:   February 5, 2025.            */s/ Patrick L. Cotter*
                                      Patrick L. Cotter (0319120)
                                      Attorney for Defendant
                                      105 Hardman Court, Suite 110
                                      South St. Paul, MN 55075
                                      Phone: 651-455-1555
                                      patrick@siebencotterlaw.com